# IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Davis A. DONNELLY, Attorney at Law.

Supreme Court

*No. 89-0607-D. Submitted on briefs May 30, 1991.—Decided June 13, 1991.*

(Also reported in 470 N.W.2d 305.)

For the appellant there was a brief by *Davis A. Donnelly,* Eau Claire.

For the Board of Attorneys Professional Responsibility there was a brief by *John C. Mitby,* Madison.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

Attorney Davis A. Donnelly appealed from the recommendation of the referee that his license to practice law be suspended for two years as discipline for professional misconduct. That misconduct consisted of his engaging in the business of obtaining Dominican Republic divorces for clients solicited and obtained through tabloid advertising without disclosing that the divorces might be void or voidable in jurisdictions in the United States. Attorney Donnelly took the position that the recommended two-year license suspension is excessive and that a suspension for six months is adequate discipline for his misconduct.

We determine that the seriousness of Attorney Donnelly's professional misconduct warrants the recommended two-year license suspension. Notwithstanding his own doubts about the validity of the divorces he was obtaining for clients, Attorney Donnelly did not inform his clients, except in a vague, general way, that the Dominican divorces he was obtaining for them might not be valid in their own jurisdictions and then only when a client specifically inquired into the divorce's validity. In so doing, Attorney Donnelly placed his own financial interests in collecting fees for obtaining the divorces above the interests of his clients. Further, the potential harm caused by Attorney Donnelly's misconduct is great. In addition to the seriousness of his misconduct, deterrence of other attorneys who might otherwise engage in similar misconduct calls for a severe disciplinary sanction.

Attorney Donnelly was admitted to practice law in Wisconsin in 1957 and practices in Eau Claire. He has not previously been the subject of an attorney disciplinary proceeding. The referee, Attorney Janet A. Jenkins,

718

made the following findings of fact based upon the parties' stipulation.

In 1985, Attorney Donnelly created International Services Corporation, a Nevada corporation whose sole owner and shareholder was his wife. ISC's only activity was arranging for individuals to obtain divorces in the Dominican Republic, with Attorney Donnelly doing the legal work, for which he was compensated at a rate of $65 per hour. ISC maintained only a mail drop in Nevada from which an agent forwarded all mail to Attorney Donnelly's law firm in Wisconsin.

In his work for ISC, Attorney Donnelly prepared and placed advertisements in three national tabloids: *The National Enquirer, The Globe* and *The Star.* The advertisement in *The National Enquirer* read:

> DIVORCE. REASONABLE. In One Day. Arrangements By Experienced Attorney. Nationwide. International. Validity Varies By State. 1-(800)635-6868. 316X California Avenue, Reno, NV 89509.

The advertisements in the other two tabloids were substantially the same but did not contain the validity disclaimer *The National Enquirer* insisted upon. The toll-free telephone number listed in the advertisement was connected to Attorney Donnelly's law office and either he or his secretary would obtain the necessary information from callers to send them a standard packet of information and forms. The toll-free number could not be used by callers in Wisconsin.

When called and asked whether a Dominican divorce would be valid in his or her jurisdiction, Attorney Donnelly would advise the caller to contact an attorney in that jurisdiction. If the caller did not inquire into the validity of the divorce, Attorney Donnelly would merely send the standard packet of information. How-

ever, he would not send information to Wisconsin residents because he knew a Dominican divorce was invalid in this state. Attorney Donnelly did not personally do any research into the validity of Dominican divorces in any jurisdiction other than Wisconsin but he retained a research firm to brief the New York law on the subject and from time to time he spoke with attorneys from other jurisdictions, who informed him concerning the validity of a Dominican divorce in their jurisdictions.

The standard information packet Attorney Donnelly sent callers included a form letter written on his law firm letterhead asking the person to fill out and return enclosed information sheets, together with a $50 fee, in an enclosed envelope addressed to his law office. In addition to stating "It is possible to get a legal divorce in one day," the letter contained the following: "Questions you may have about the effect of a foreign divorce in your jurisdiction should be referred to an attorney in your state." At some time in the course of his business, the letter was changed to include the following: "When your divorce is completed, it will be legalized (authenticated) by the American Embassy in the Dominican Republic."

The information packet also included Attorney Donnelly's business card, which identified him as an attorney at law, a list of the type of divorce services available set out in a pamphlet announcing "A New Way To Get A Legal Divorce," a copy of a newspaper article concerning an entertainer's having obtained a Dominican divorce, two power of attorney forms with blanks to be filled out by the "plaintiff" and the "defendant" and an information sheet requesting basic information about the divorcing parties. The information packet offered "mutual" and "non-consent" divorces. For the former,

both parties were to execute the power of attorney forms; for the latter, only the "plaintiff" was to execute one. The $50 application fee was applied to the divorce fee, which ranged from $290 to $1,115, depending on the type of divorce and the length of time needed to obtain it.

After Attorney Donnelly received the information forms, he sent them to an attorney in the Dominican Republic, who placed the divorce on the court records there, charging approximately $90 to $300. That attorney then sent Attorney Donnelly the divorce documents, which he forwarded to the client. Attorney Donnelly estimated that he obtained approximately 1,200 Dominican divorces for clients between 1985 and 1987. In 1987, he earned approximately $100,000 for his services to ISC and ISC earned approximately $15,000.

Attorney Donnelly's Dominican divorce business came to the attention of the Board of Attorneys Professional Responsibility (Board) by a communication from an attorney who had been contacted by the Post Judge Advocate at Fort McCoy, Wisconsin, expressing concern that Attorney Donnelly's materials on Dominican divorces were "floating around" an Army base in the Pacific and appeared to be deceptive advertising because of the doubtful validity of the divorces they offered. The Board also received a letter from the Massachusetts Board of Bar Overseers concerning divorces obtained by Attorney Donnelly. That board had received an inquiry from a Massachusetts attorney whose client had obtained two divorces through Attorney Donnelly's business, one for herself and one for the man she was taking care of. She married that man and, after his death, inquired into the validity of his divorce. The advertisement to which the client had responded was one appear-

ing in *The Star* and did not include the validity disclaimer.

Less than a year later the Board received a letter from a deputy district attorney in Stockton, California, stating that a local resident had inquired whether his Dominican divorce obtained through Attorney Donnelly's business was valid. The district attorney asserted that Attorney Donnelly's business constituted false advertising, mail fraud and theft. Shortly thereafter, the Board received a letter from a man in Texas stating that he had obtained a Dominican divorce through Attorney Donnelly's business and was later told by a Texas attorney that the divorce was not valid because his wife had not received notice. In this and each of the other cases brought to the Board's attention, Attorney Donnelly refunded the client's fee.

Based on the foregoing facts, the parties stipulated and the referee concluded that Attorney Donnelly used misleading advertising, in violation of SCR 20.08(7)(a),[1] leading potential clients to believe they were securing the services of an attorney to procure a legal divorce without disclosing that the divorce might be void or voidable in the United States and might be valid only in the Dominican Republic. The referee also concluded that his acceptance of fees for obtaining those divorces without disclosing to the clients that the divorces might be void or voidable constituted conduct involving misrepresenta-

---

[1]Former SCR 20.08 provides:

**Professional notices, letterheads, offices and law lists.**

. . .

(7)(a) A lawyer may advertise the lawyer's availability to provide legal services except use of any advertisement which is false, misleading, deceptive or unfair is professional misconduct.

The current rule is 20:7.2.

tion by concealment, contrary to SCR 20.04(4).[2]

The referee was unable to conclude that Attorney Donnelly's misrepresentations by his advertisements were intentional, as there was no evidence that he had deliberately misled any person into believing that a Dominican divorce had the same legal validity as one obtained pursuant to the laws of the person's jurisdiction. Further, when asked about the divorce's validity, he told callers to consult an attorney in the caller's jurisdiction; the cover letter sent with the information packet did likewise. Thus, the referee concluded, while his misrepresentations were not intentional, they were "certainly in reckless disregard of the legal well-being of his 'clients.' "

In this regard, the referee expressed concern with what she termed Attorney Donnelly's "cavalier" attitude toward the questionable validity of the Dominican divorces he obtained for clients. Acknowledging that he had done some initial but not extensive research regarding the validity of those divorces, she cited testimony in which he stated, "I did divorces in many, many, many countries, and I did not inquire or clutter my mind with what the law was."

The referee also was concerned with rationalizations Attorney Donnelly gave for his conduct: some of his clients did not care whether the divorce was valid; some had no other means of obtaining a divorce and he filled a need which would otherwise have gone unmet; if a person was not satisfied with a divorce, he would refund the fee. These, together with his failure to advise clients of the questionable validity of their divorces—validity which he himself questioned—led the

---

[2]Former SCR 20.04 provides: "**Misconduct.** A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The current rule is SCR 20:8.4(c).

referee to conclude that, although Attorney Donnelly had held himself out as an attorney in obtaining the clients, he was absolving himself of any professional responsibility for his actions taken on their behalf.

The referee also addressed Attorney Donnelly's lack of concern with the harmful effect his conduct may have had on his clients, including the status of children born of subsequent marriages, the possibility of bigamy prosecutions and the status of a person's heirs. In addition to a great potential for harm many years after the Dominican divorces had been obtained, the referee saw damage his conduct has caused the legal profession as a whole.

In regard to the need for deterrence of similar misconduct, the referee noted that Attorney Donnelly had profited substantially from his divorce business, earning $100,000 in one year alone. She considered this fact as having a bearing on the sanction to be imposed, asserting that it would defeat the purpose of the ethical rules to allow an attorney to base a decision whether to engage in professional misconduct upon some type of risk-benefit calculus. Applying that analysis herself, the referee determined that a six-months license suspension, which the Board initially had sought and which Attorney Donnelly urged in this appeal, might be insufficient to deter attorneys from engaging in misconduct that could produce a $100,000-per-year income.

Based on the fact that his conduct was motivated solely for personal profit and was in total disregard of its harmful effects on at least 1,200 families, the referee recommended that the court suspend Attorney Donnelly's license for two years as discipline.

The referee also addressed the question of notifying the persons for whom Attorney Donnelly obtained Dominican divorces of their questionable validity. In this regard, the referee noted two issues: as several years

have passed since the divorces were obtained, it may be difficult to locate them; also, it may do more harm than good to raise the validity question with persons who believe they were validly divorced several years ago and have acted accordingly since then. Nonetheless, the referee considered that it would be irresponsible not to inform those persons of the situation and suggest they seek competent legal advice so that they would be able to make an informed choice regarding what action, if any, they should take. The referee recommended that Attorney Donnelly be responsible for providing the names and addresses of those persons and bear the cost of notifying them and that the Board oversee the notification process, including the preparation of the notice.

We adopt the referee's findings of fact and conclusions of law and accept the recommendation for discipline. Attorney Donnelly's argument that his misconduct was not aggravated is without merit. Likewise meritless is his assertion that the referee engaged in pure speculation regarding harm he may have caused because only three complaints have been received over the five years since he first obtained a Dominican divorce for a client and that, had the advertising and the information packet he disseminated been misleading or misunderstood, there would have been "hundreds" of complaints from all over the world.

We also reject Attorney Donnelly's claim that his conduct was endorsed or at least not viewed as seriously by several persons in the disciplinary process. He asserted that, after he had disclosed his divorce business to the Board in 1986 when responding to a request for information concerning a client's grievance, a member of the Board's staff told him he saw nothing wrong with such conduct. Attorney Donnelly also said he asked another staff member whether he should terminate the

divorce business and that she responded that the decision was up to him. However, there was no testimony of Board staff presented regarding these assertions, as the matter was presented on a stipulation of facts.

We also reject Attorney Donnelly's contention that a six-month license suspension is appropriate discipline because a member of the district professional responsibility committee with whom he met had first told him to remove any references to his being a lawyer from his advertising and information packet and, if he did, the committee would recommend merely a private reprimand. Subsequently, Attorney Donnelly stated, the full committee met and he was told to terminate the business and that if he did, the committee would recommend that the Board impose a private reprimand. In fact, the committee sent its report to the Board without recommendation for discipline.

Attorney Donnelly's misconduct is of sufficient seriousness to warrant the suspension of his license to practice law for two years. He acted in reckless disregard of the interests of his clients and did so purely for financial gain. Coupled with the degree and extent of potential harm, his conduct warrants serious disciplinary sanction. In addition, in order to alleviate some of that harm, we accept the referee's recommendation to require Attorney Donnelly to notify his divorce clients of that potential for harm.

IT IS ORDERED that the license of Davis A. Donnelly to practice law in Wisconsin is suspended for a period of two years, commencing July 15, 1991.

IT IS FURTHER ORDERED that Davis A. Donnelly provide the Board of Attorneys Professional Responsibility a list of the names and last known addresses of the clients for whom he obtained divorces in the Dominican Republic and, at his expense, provide

those clients a notice concerning the validity of their divorces, such notice to be approved by the Board.

IT IS FURTHER ORDERED that within 60 days of the date of this order Davis A. Donnelly pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Davis A. Donnelly to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Davis A. Donnelly comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.